Fred B. Burnside *(Admitted Pro Hac Vice)*
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: 206.757.8016
fredburnside@dwt.com

John Freed *(Admitted Pro Hac Vice)*
Davis Wright Tremaine LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6532
Facsimile: (415) 276-6599
jakefreed@dwt.com

*Attorneys for Defendant Zions
Bancorporation, N.A.*

James S. Jardine (1647)
Michael D. Mayfield (8237)
Beth J. Ranschau (13846)
Ray Quinney & Nebeker P.C.
36 South State Street, Ste. 1400
Salt Lake City, UT 84111
Telephone: 801.323.3337
jjardine@rqn.com
mmayfield@rqn.com
branschau@rqn.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JANE THORNTON, an individual on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>ZIONS BANCORPORATION, N.A.,<br><br>        Defendant. | **DEFENDANT ZIONS BANCORPORATION, N.A.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br> Case No.: 2:21-cv-00345-DAO<br><br> Judge Robert J. Shelby<br><br><br>**ORAL ARGUMENT REQUESTED** |

1

## TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................1

II.  Precise Relief Sought And Specific Grounds ....................................................2

III.  STATEMENT OF FACTS ........................................................................................2

    A.  Zions's History and Background ..................................................................2

    B.  The Parties' Account Agreement...................................................................3

        1.  Plaintiff Agreed to Bring All Claims Within One Year of Accrual. .........3

        2.  Plaintiff Had a Duty to Contact Zions About Errors or Problems. ...........3

        3.  NSF Fee Disclosures Related to Re-presented Payment Requests. ..........3

        4.  Overdraft Fee Disclosures Relevant to Authorization Holds. ...................4

    C.  The ACH Process and NACHA Rules ..........................................................5

    D.  NSF and Overdraft Fees Serve a Valuable Purpose ....................................7

    E.  Plaintiff and Her Fees. .................................................................................8

    F.  Plaintiff's Claims and the Putative Classes. .................................................9

IV.  ARGUMENT ............................................................................................................9

    A.  Plaintiff Lacks Standing to Bring Her Authorization-Hold Claim..............10

    B.  Plaintiff's Claims Are Time-Barred. ..........................................................12

    C.  Plaintiff Failed to Comply With Her Pre-Suit Notice Requirement...........12

    D.  The National Bank Act and Truth in Savings Act Preempt Plaintiff's Claims. .........................................................................................................13

        1.  National Bank Act Preemption. ............................................................14

        2.  Truth in Savings Act Preemption...........................................................15

    E.  Plaintiff's Contract-Based Claims Fail on the Merits.................................17

        1.  Zions Did Not Breach its Contract By Charging Retry NSF Fees .........17

        2.  Plaintiff's Authorization-Hold-Fee Claim Fails Because She Never Incurred any Such Fee and the Contract Discloses the Fee Practice..............21

        3.  Zions Did Not Breach the Duty of Good Faith and Fair Dealing............24

V.  CONCLUSION........................................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Alfaro v. Bank of Am., N.A.*,
  2021 WL 1149889 (S.D. Fla. 2021) ...................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................9, 10

*Barajas v. Myriad Genetic Labs., Inc.*,
  2014 WL 5681691 (D. Utah 2014)...................................................12

*Barnett Bank of Marion Cty., N.A. v. Nelson*,
  517 U.S. 25 (1996)...................................................................14

*Beyer v. Countrywide Home Loan Serv., L.P.*,
  2008 WL 1791506 (W.D. Wash. 2008), *aff'd* 359 Fed. Appx. 701
  (9th Cir. 2009)........................................................................13

*Boone v. MB Fin. Bank, N.A.*,
  375 F. Supp. 3d 987 (2019) .......................................................23, 24

*Burkett v. Convergys Corp.*,
  2015 WL 4487706 (D. Utah 2015)...................................................12

*Choy v. Space Coast Credit Union*,
  2020 WL 3039243 (Fla. Cir. Ct. 2020) ........................................20, 23, 24

*Cinar v. Bank of Am., N.A.*,
  2014 WL 3704280 (D. Md. 2014) ....................................................17

*Cohen v. Wrapsol Acquisition, LLC*,
  177 F. Supp. 3d 1373 (D. Utah 2016)...............................................25

*Costoso v. Bank of Am., N.A.*,
  74 F. Supp. 3d 558 (E.D.N.Y. 2015) ..................................................6

*Crockrom v. Bank of Am., N.A.*,
  2020 WL 6747034 (S.D.N.Y. 2020)..................................................13

4811-4538-1881v.2 0114609-000005

*Deer Crest Assocs. I, LC v. Silver Creek Dev. Grp., LLC*,
  222 P.3d 1184 (Utah Ct. App. 2009) ................................................................. 12

*Diane Sales, Inc. v. Am. Express Centurion Bank*,
  2014 WL 11429026 (D. Md. 2014) ..................................................................... 6

*Dog Walkin' Divas v. Wash. Fed. Inc.*,
  2021 WL 2309675 (W.D. Wash. 2021), *R&R adopted*, 2021 WL
  3667016 (W.D. Wash. 2021) .............................................................................. 11

*Fenton v. Tri-County Bank & Trust Co.*,
  2020 WL 8673276 (Putnam Cty. Super. Ct. Dec. 29, 2020),
  *vacated by settlement* (March 2, 2021) ........................................................ 18, 19

*Foltz v. Matanuska Valley Fed. Credit Union*,
  2021 WL 865542 (Alaska Super. 2021) .................................... 16, 17, 23, 24

*Fultz v. World Sav. & Loan Ass'n*,
  2008 WL 4131512 (W.D. Wash. 2008) .............................................................. 15

*FX Energy, Inc. Sec. Litig.*, *In re*,
  2009 WL 1812828 (D. Utah 2009) .................................................................... 10

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ........................................................................... 9

*Giotta v. Ocwen Loan Servicing*,
  706 F. Appx. 421 (9th Cir. 2017) ...................................................................... 13

*Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*,
  127 F. Supp. 3d 1176 (D. Utah 2015) ............................................................... 25

*Gutierrez v. Wells Fargo Bank, N.A.*,
  704 F.3d 712 (9th Cir. 2012) ....................................................................... 14, 15

*Haines v. Wash. Trust Bank*,
  2020 WL 6861458 (Wash. Sup. Ct. 2020) .................................................. 19, 20

*Holt v. U.S.*,
  46 F.3d 1000 (10th Cir. 1995) .......................................................................... 10

iii
MOTION TO DISMISS

*Lambert v. Navy Fed. Credit Union*,
    2019 WL 3843064 (E.D. Va. 2019) ........................................................... 16, 20

*Lifevantage Corp. v. Domingo*,
    208 F. Supp. 3d 1202 (D. Utah 2016) ................................................................ 13

*Lossia v. Flagstar Bancorp, Inc.*,
    895 F.3d 423 (6th Cir. 2018) ........................................................................... 5, 6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 10, 11

*Montgomery v. Bank of Am. Corp.*,
    515 F. Supp. 2d 1106 (C.D. Cal. 2007) ........................................................... 15

*Montoya v. Chao*,
    296 F.3d 952 (10th Cir. 2002) ........................................................................ 10

*New Mexico v. Capital One Bank (USA), N.A.*,
    980 F. Supp. 2d 1314 (D. N.M. 2013) .............................................................. 15

*Overby v. Chase Manhattan Bank*,
    351 F. Supp. 2d 219 (S.D.N.Y. 2005) .............................................................. 13

*Page v. Alliant Credit Union*,
    2020 WL 5076690 (N.D. Ill. 2020) ...................................................... 17, 20, 21

*PDQ Lube Ctr. v. Huber*,
    949 P.2d 792 (Utah Ct. App. 1997) ................................................................. 25

*Progressive Fin. Holdings, LLC v. Kelcin, Inc.*,
    2016 WL 5817056 (D. Utah 2016) .................................................................. 25

*Razavi v. Green State Credit Union*,
    2020 WL 7379064 (Iowa Dist. 2020) ......................................................... 22, 24

*Rose v. Chase Bank USA, N.A.*,
    513 F.3d 1032 (9th Cir. 2008) .................................................................... 14, 15

iv
MOTION TO DISMISS

*Smith v. U.S.*,
    561 F.3d 1090 (10th Cir. 2009) ........................................................................10

*Southern Utah Wilderness Alliance v. Palma*,
    707 F.3d 1143 (10th Cir. 2013) ........................................................................10

*Spokeo, Inc. v. Robins*,
    136 S.Ct. 1540 (2016) ......................................................................................11

*Syme v. Symphony Grp. LLC*,
    437 P.3d 576 (Utah 2018) ................................................................................13

*Tandy v. City of Wichita*,
    380 F.3d 1277 (10th Cir. 2004) ........................................................................11

*Tyrel v. Maskcara Indus.*,
    438 F. Supp. 3d 1279 (D. Utah. 2020) ............................................................13

*Volden v. Innovative Fin. Sys., Inc.*,
    440 F.3d 947 (8th Cir. 2006) .............................................................................7

*Wardley Corp. v. Meredith Corp.*,
    93 Fed. App'x 183 (10th Cir. 2004) ................................................................25

*Watters v. Wachovia Nat'l Bank*,
    550 U.S. 1 (2007) .............................................................................................14

*Wells Fargo Bank N.A. v. Boutris*,
    419 F.3d 949 (9th Cir.2005) ............................................................................15

*Whittington v. Mobiloil Fed. Credit Union*,
    2017 WL 6988193 (E.D. Tex. 2017), *aff'd* 780 Fed. App'x. 171
    (5th Cir 2019)....................................................................................14, 17, 24

*Whittington v. Mobiloil Fed. Credit Union*,
    2018 WL 6582824 (E.D. Tex. 2018), *aff'd* 780 Fed. Appx. 171
    (2019) ...............................................................................................................22

*Winamaki v. Umpqua Bank*,
    2020 WL 6861466 (Or. Cir. 2020) ..................................................................20

v
MOTION TO DISMISS

*Young Living Essential Oils, LC v. Marin*,
266 P.3d 814 (Utah 2011) ................................................................. 25

**Statutes**

12 U.S.C. § 4301 ................................................................................ 16

**Federal Rules of Civil Procedure**

Rule 12(b)(1) ..................................................................................... 10

Rule 12(b)(6) ................................................................................. 9, 10

**Regulations and Regulatory Materials**

12 C.F.R. § 7.4002(b)(2) ..................................................................... 8

12 C.F.R. § 7.4007 ............................................................................ 15

12 C.F.R. § 7.4007(b) ........................................................................ 15

12 C.F.R. § 1030.1 ............................................................................ 16

12 C.F.R. § 1030.1(d) ....................................................................... 16

12 C.F.R. § 1030.4(b)(4) ................................................................... 16

12 C.F.R. § 1030.6(a)(3) ................................................................... 16

Confumer Financial Protection Bureau, Data Point: Checking Account
Overdraft (CFPB 2014), *available at*
https://files.consumerfinance.gov/f/201407_cfpb_report_data-
point_overdrafts.pdf ............................................................... 7, 8, 9

Consumer Financial Protection Bureau, Understanding the Overdraft
"Opt-in" Choice (CFPB Jan. 19, 2017), *available at*
www.consumerfinance.gov/about-us/blog/understanding-
overdraft-opt-choice/ ................................................................... 5

vi
MOTION TO DISMISS

Office of the Comptroller of the Currency, Help Topics, Bank
   Accounts, NSF Fees & Overdraft Protection (Oct. 2020), *available
   at* https://www.helpwithmybank.gov/help-topics/bank-
   accounts/nsf-fees-overdraft-protection/overdraft-protection-
   programs/overdraft-resubmitted.html ................................................................7

Office of the Comptroller of the Currency, Interpretive Ruling Re
   Nat'l Bank Serv. Charges, 48 Fed. Reg. 54319-01, 1983 WL
   110730 (1983) ......................................................................................................8

**NACHA Materials**

NACHA, ACH Operations Bulletin #1-2014 (2014), at 6, *see*
   www.nacha.org/system/files/resources/NACHA_Operations_Bulle
   tin_Questionable_ACH_Debit_Origination_September_30_2014.p
   df ...........................................................................................................................6

NACHA Operating Guideline § II, Duplicate Files ................................................6

NACHA Return Code R24, Duplicate Entry ............................................................6

NACHA Rule 8.37, Entry ..........................................................................................6

NACHA Rule 8.38, Erroneous Entry ........................................................................6

NACHA Rules, App. VII, Subpart 7.8.2, Debit Entries ..........................................6

MOTION TO DISMISS

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Jane Thornton sues Defendant Zions Bancorporation, N.A. (Zions) under two breach-of-contract theories.  She first complains Zions charged her two insufficient funds ("NSF") fees when, on two different days, her merchant (Venmo) presented two payment requests, which Zions returned because she lacked sufficient funds each time.  Plaintiff believes that because she previously bounced the same payments she is immune to further fees, even if she again bounces these payment requests.  She is wrong.  The Deposit Account Agreement ("Agreement") explains Plaintiff "***will*** incur an NSF fee if [Zions] return[s] an Item because [her] account has an insufficient Available Balance," and an "Item" includes any payment request presented to Zions.  Amended Complaint (AC), Ex. A §§ 7(c), (p) (emphasis added).  Venmo made two payment requests when Plaintiff lacked sufficient funds, so she got two fees, as agreed.  AC ¶ 17.

Plaintiff next complains that, if she has sufficient funds when a merchant authorizes a debit-card transaction, she should never get an overdraft fee, even if—in the days between authorization and payment—her balance goes negative.  But this never happened to her.  None of the cited overdraft fees were tied to debit-card transactions, and she fails to mention that Zions voluntarily ***refunded*** the challenged fees the next business day.  Regardless, the Agreement permits those fees, explaining she must have a sufficient available balance "when the merchant submits the final transaction amount to [Zions]," and that she can get an overdraft fee "even if [her] account had a sufficient Available Balance when the merchant requested authorization."  AC, Ex. A, at 13 § 7(n).  Zions warns that any "amount subject to an Authorization Hold may ***not be applied to settle a specific debit card transaction or any other specific transaction.***"  *Id.* at 1, § 7(o) (emphasis added).  Because this practice never occurred to Plaintiff, her claim fails.

## II.    PRECISE RELIEF SOUGHT AND SPECIFIC GROUNDS

The Court should dismiss the AC for the following reasons:

*First*, Plaintiff lacks standing to bring a claim based on authorization holds because she did not pay any overdraft fee based on an authorization hold.

*Second*, the Agreement's one-year limitations period bars all of Plaintiff's claims.

*Third*, Plaintiff did not comply with the Agreement's pre-suit notice requirement to allow Zions to address any alleged improper transactions causing fees.

*Fourth*, the National Bank Act (NBA) and federal Truth in Savings Act (TISA) preempt Plaintiff's claims because she is using state law to mandate additional or different disclosures.

*Fifth*, Plaintiff's contract claims fail because Zions charged an NSF fee each time Venmo presented a payment request against insufficient funds, as promised.  Her Authorization Hold claim fails because she incurred no such fees, Zions refunded the overdraft fees she cites, and because the Agreement discloses the fee practice.  And her derivative good-faith and fair-dealing claim fails because it is subsumed within the contract claim, and because Zions's exercise of express contract rights is not a breach.

## III.    STATEMENT OF FACTS

### A.    Zions's History and Background

Zions Bank—a division of Zions Bancorporation N.A., and where Plaintiff had a deposit account—was founded in Salt Lake City in 1873, and now has 122 full-service financial centers across Utah, Idaho, and Wyoming.  *See* https://www.zionsbank.com/personal-banking/about-us/.

**B.     The Parties' Account Agreement**

Plaintiff's account is governed by the Agreement and Fee Schedule attached to her AC.

*See* AC ¶ 11 & Exs. A-B.  Her 135-paragraph AC quotes the Agreement exactly ***twice*** and the

Fee Schedule ***once***, without identifying a provision that Zions breached.  AC ¶¶ 20, 30, 76.

**1.     Plaintiff Agreed to Bring All Claims Within One Year of Accrual.**

The Agreement provides that customers have one year to bring any claim: "An action or

proceeding by you to enforce an obligation, duty, or right arising under this Agreement or by law

with respect to your account, safe deposit box, or any other account service ***must be commenced***

***within one year after the cause of action accrues***." AC, Ex. A, at 32 § 23 (emphasis added).

**2.     Plaintiff Had a Duty to Contact Zions About Errors or Problems.**

The Agreement contains several provisions requiring the parties to provide notice before

filing suit.  It "establishes the basic rules governing your account and your responsibilities,

***particularly in notifying the Bank of problems***." *Id.* § 1 (emphasis added); *see also id.* § 14(a).

The Agreement explains that where (as here) a customer claims electronic funds-transfers "were

resubmitted by the merchant for payment without Plaintiff's request," AC ¶ 17, Plaintiff was

obligated to contact Zions within 60 days from the date of her statement to report any error or

problem.  AC, Ex. A § 11(s).  Where a customer complains of an unauthorized payment request,

the Agreement requires notice to Zions within 30 to 60 days.  *Id.* §§ 14(b)(i)-(ii).

**3.     NSF Fee Disclosures Related to Re-presented Payment Requests.**

The Agreement defines an "Item" as payment "presented in paper or electronic form"

that "may include an ACH debit or credit, or any form of electronic presentment."  *Id.* § 7(c).

This definition ties an "item" to any ***presentment*** of a payment request against an account—not

whether it is the first, second, or third presentment.  The Agreement also explains ***how*** and ***when*** NSF fees arise: "[i]f we do not pay the ***presented*** transaction, the Item(s) may be returned and you may be subject to an NSF fee," and that if Zions Bank does "not pay an Item, ***you will incur an NSF fee if [Zions] return[s] an item because your account has an insufficient available balance***."  *Id.* §§ 7(o), 7(p) (emphasis added).  The Fee Schedule discloses the ***amount*** of the fees and confirms Zions will charge an NSF fee for any "transaction"—check, ACH, or otherwise—"posted against insufficient funds."  AC, Ex. B at 3.  These provisions confirm that any time a merchant presents a payment request against Plaintiff's account when she lacks sufficient funds, Zions will return the request and charge an NSF fee.

### 4.    Overdraft Fee Disclosures Relevant to Authorization Holds.

The Agreement expressly discloses that Plaintiff will incur a fee if her Available Balance becomes negative in between authorization and final payment:

> Once we have given authorization to the merchant on a Signature-Based Transaction and an Authorization Hold has been placed on your account, the merchant must settle the transaction by submitting the final transaction amount to us for processing. … *If the Available Balance in your account is not sufficient when the merchant submits the final transaction amount to us, the settlement may cause your account to incur an NSF Fee.* <u>This can occur even if your account had a sufficient Available Balance when the merchant requested authorization</u>."

 AC, Ex. A § 7(n) (italics added; underlining in original); *see also id.* § 7(o) ("[Y]our Available Balance may change between the time you authorize a debit card transaction and the time it is paid. . . . An amount subject to an Authorization Hold may not be applied to settle a specific . . . transaction."); *id.* § 7(m) ("[Y]ou are responsible for keeping a record and closely tracking the

transactions in your account *so that you maintain a sufficient Available Balance to cover all transactions until they are posted to your account*.") (emphasis added).[1]

### C.    The ACH Process and NACHA Rules

Plaintiff NSF-fee claims challenge debit-card requests, AC ¶¶ 17, 101, made through an Automated Clearing Huse ("ACH") and governed by National Automated Clearinghouse ("NACHA") Rules, which Plaintiff accepted.  AC, Ex. A § 12 ("You agree that you and your ACH payment orders shall be bound and governed by the … (NACHA) rules."), *id.* § 13 (funds transfers are "subject to all … NACHA rules"); *see also Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 426 (6th Cir. 2018) ("ACH transactions are electronic payments made from one bank account to another and involve one party providing their account number and routing number"). "There are five parties to an ACH transaction:  (1) the Originator [merchant]; (2) the Originating Depository Financial Institution, or ("ODFI") (the merchant's bank); (3) the ACH Operator (the Federal Reserve); (4) the Receiver [Plaintiff]; (5) the Receiving Depository Financial Institution, or ("RDFI")" (Zions).  *Lossia*, 895 F.3d at 426.  "The Receiver [Plaintiff] is the party who authorizes the Originator [merchant] to introduce the transaction into the ACH Network."  *Id.* Once a merchant initiates the transaction, its "bank introduce[s] the transaction to the ACH Network by sending the transaction to the Federal Reserve (the ACH Operator), which in turn forward[s] the transaction[] to the Receiver's bank…so that [the Receiver's] account [can] be

---

[1] Contrary to Plaintiff's suggestion that the CFPB views this practice as unfair, *see* AC ¶ 64, it merely requires that Zions "properly disclose" the practice.  *Id.*  Indeed, the CFPB recognizes this practice is common: "Just because your account has enough funds when you're at the checkout counter doesn't mean you'll have the funds later when the transaction finally settles. … *Debit card overdraft fees can occur on transactions that were first authorized when there were sufficient funds to cover them, but took the account negative when the transaction settled.*" www.consumerfinance.gov/about-us/blog/understanding-overdraft-opt-choice/ (emphasis added)

debited." *Id.* at 426-27.  When a merchant initiates a debit transaction, "the consumer's bank [the RDFI] relies on a series of warranties received from the Originator through its bank that it has received proper authorization from the consumer before initiating a debit." *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 570-71 (E.D.N.Y. 2015).

For a merchant to initiate an ACH debit, Plaintiff had to authorize her merchant to initiate a debit request to Zions.  AC, Ex. A § 13(a) ("You may authorize a third party to initiate electronic fund transfers between your eligible account and the third party's account.").  Zions **must** "honor all debits presented" by Plaintiff's authorized merchants.  *Costoso*, 74 F. Supp. 3d at 571 (citing NACHA Rules).  If Zions returns an ACH for insufficient funds, the merchant may re-present the ACH two more times.  *See* ACH Operations Bulletin #1-2014 (2014), at 6, *see* www.nacha.org/system/files/resources/NACHA_Operations_Bulletin_Questionable_ACH_Debit _Origination_September_30_2014.pdf.  Merchants must label "retry" on any re-presented item (in NACHA terms, a "reinitiated" entry) previously returned for insufficient funds—although each presentment contains unique entry date and a unique ACH trace number (akin to a check number).  *Id.* at n.28.  Each presentment of a debit request is a new item because NACHA rules do not permit re-presentment of the same item.  NACHA Rules refer to presentment of the **same** item as a "duplicate" item, which is categorized as an "Erroneous Entry," subject to return (and compensation from the merchant's bank).  *See* Ex. C hereto (NACHA Rules 8.37, 8.38; App. VII, § 7.8.2; NACHA Operating Guideline § II, Duplicate Files; NACHA Return Code R24).

NACHA Rule 8.37 confirms that "every request for the withdrawal of money" from Plaintiff's account was a "debit entry," and "each debit entry shall be deemed an item" for purposes of debiting deposit accounts.  *Id.*; *see also Diane Sales, Inc. v. Am. Express Centurion*

*Bank*, 2014 WL 11429026, *2 (D. Md. 2014) (holding the same).  Thus, every ACH request to Zions on behalf of Plaintiff—even if the request is for the same purchase—is a separate item, subject to a fee because Zions is required to process each request.  *See, e.g., Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 949-50 (8th Cir. 2006) (citing NACHA Rules; noting "Each presentment resulted in a $20.00 [NSF] charge from [plaintiff's] credit union").

Federal regulators agree.  The CFPB recognizes that "[i]f an item (such as a check or ACH debit) was presented more than once, ***each occurrence is counted as a separate transaction***."  Data Point: Checking Account Overdraft (CFPB 2014), at 6 n.4, *Available at* https://files.consumerfinance.gov/f/201407_cfpb_report_data-point_overdrafts.pdf (emphasis added).  The Office of the Comptroller of the Currency's ("OCC") consumer guidance on NSF fees reiterates that each time a payment is presented, it is subject to another fee:

> **How many times will a bank allow an insufficient funds (NSF) check to be redeposited/resubmitted?** Generally, <u>a bank may attempt to deposit the check two or three times when there are insufficient funds in your account.  However, there are no laws that determine how many times a check may be resubmitted,</u> and there is no guarantee that the check will be resubmitted at all.  <u>Overdraft or insufficient funds fees can be assessed each time the check is submitted.</u>

OCC, Help Topics, Bank Accounts, NSF Fees & Overdraft Protection (Oct. 2020).[2]

### D.    NSF and Overdraft Fees Serve a Valuable Purpose

Plaintiff characterizes Zions's retry fees as "abusive."  AC ¶ 3, 14, 29.  But Zions's federal regulator has long stressed the importance of these fees as an essential deterrent:

> **Deterring of misuse by borrowers**.  Certain deposit account services provided by banks, such as the honoring of checks drawn against nonsufficient funds, ***have the potential for misuse*** . . . . [S]ervice charges should discourage customers from

---

[2] *Available at* https://www.helpwithmybank.gov/help-topics/bank-accounts/nsf-fees-overdraft-protection/overdraft-protection-programs/overdraft-resubmitted.html (emphasis added).

frequently writing checks in amounts greater than their account balances. … ***An appropriate option***, the Office believes, is ***to establish service charges to be levied in connection with the writing of nonsufficient fund checks by borrowers to discourage customers from frequently writing such checks***.

OCC, Interpretive Ruling Re Nat'l Bank Serv. Charges, 48 Fed. Reg. 54319-01, 1983 WL 110730 (1983) (emphasis added).  Indeed, OCC regulations ***require*** Zions to set fees to "deter[]…misuse by customers of banking services," to "maintain[] the safety and soundness of the institution."  12 C.F.R. § 7.4002(b)(2).  Zions sets fees to encourage customers to take steps to ensure the merchant on the other side of the transaction gets paid.  Nor is it "abusive" to charge a second fee for a second payment request against insufficient funds, as Plaintiff suggests.  AC ¶¶ 14, 29.  Absent a second fee, members have little incentive to bring accounts current, placing Zions at risk of unsound practices and forcing it to incur unrecoverable processing costs.

### E.     Plaintiff and Her Fees.

Plaintiff devotes only two AC paragraphs to her experience with Zions.  AC ¶¶ 17, 104.

**NSF Fee Allegations.**  Plaintiff alleges that on "numerous occasions" in April 2020, she "was charged $35 NSF fees on transactions which were resubmitted by her merchant for payment without Plaintiff's request to reprocess the transactions."  AC ¶ 17.  Plaintiff's April 2020 statement reflects ACH payment requests from Venmo on April 3 and April 6, 2020—for $300 and $328 respectively—which were returned for insufficient funds resulting in two $32 NSF fees.  AC, Ex. D.  The April statement also shows Venmo re-presented those payment requests on April 8 and 9, 2020, but again, Plaintiff lacked sufficient funds and Zions returned those payments, and assessed NSF fees for both re-presentments.  *Id.* at 5.[3]

---

[3] Plaintiff alleges she made no "request" for Venmo to re-present the transactions, AC ¶ 17, but Venmo's Terms of Use specifically warn that it ***will*** make a second request for payment: "***You***

**Authorization Hold Fees (or Lack Thereof).**  Plaintiff alleges that on December 24, 2018, she was assessed a fee "for a debit card transaction that settled that day despite the fact that positive funds were deducted immediately, prior to that day, for the transaction on which Plaintiff was assessed the [overdraft] fee."  AC ¶ 104.  She claims she had a positive balance when the transactions were authorized.  *Id.*  But her statements show no overdrafts from that date were debit-card transactions—so there was no authorization hold—and she fails to mention that Zions refunded those fees two days later.  LeBaron Decl. ¶¶ 2-5 & Exs. A & B.

### F.   Plaintiff's Claims and the Putative Classes.

Plaintiff sues for breach of contract, alleging Zions breached the Agreement by (a) charging NSF fees when her merchant re-presented payment requests against her account and she lacked sufficient funds; and (b) purportedly charging her an NSF fee for a debit-card transaction when she had a sufficient available balance at the time of authorization but lacked sufficient funds at the time the merchant presented the payment request.  AC ¶¶ 123-35.  She seeks to represent two nationwide classes under each of her two liability theories.  *Id.* ¶ 113.

## IV.   ARGUMENT

**Rule 12(b)(6).**  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A plaintiff must 'nudge [his] claims across the line from conceivable to plausible'" to withstand dismissal.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

---

*authorize us to try this transfer again if the initial transfer is rejected by your bank for any reason.*"  *Available at* https://venmo.com/legal/us-user-agreement/ (emphasis added).

4811-4538-1881v.2 0114609-000005

of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679.  Under Rule 12(b)(6),

"courts may consider not only the complaint itself, but also attached exhibits and documents

incorporated . . . by reference." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009). "'[T]he

district court may consider documents referred to in the complaint if the documents are central to

the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Id*. "If the

documents on which the [plaintiff] rel[ies] 'contradict the allegations of the . . . complaint, the

documents control." *In re FX Energy, Inc. Sec. Litig.,* 2009 WL 1812828, *6 (D. Utah 2009).

**Rule 12(b)(1).**  On a factual challenge to subject matter jurisdiction, courts

"may not presume the truthfulness of the complaint's factual allegations.  A court has wide

discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve

disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir.

1995).  "The burden of establishing subject-matter jurisdiction is on the party asserting

jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

A.       **Plaintiff Lacks Standing to Bring Her Authorization-Hold Claim.**

Standing is a "threshold jurisdictional question of whether a court may consider the

merits of a dispute." *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1152 (10th

Cir. 2013).  "[T]he irreducible constitutional minimum of standing" contains three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical.  Second, there must be a causal
> connection between the injury and the conduct complained of—the injury has to
> be fairly traceable to the challenged action of the defendant, and not the result of
> the independent action of some third party not before the court.  Third, it must be
> likely, as opposed to merely speculative, that the injury will be redressed by a
> favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

MOTION TO DISMISS

The Court lacks subject matter jurisdiction over the Authorization Hold claim because:

**First**, Plaintiff cannot show injury in fact because she fails to identify Zions's concrete and non-hypothetical "invasion of a legally protected interest." *Lujan*, 504 U.S. at 561; *see also, e.g.*, *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016). The record shows that on the day in question, Plaintiff incurred three overdraft fees, but none of them stemmed from a debit-card transaction—two checks and a Venmo ACH payment—so there was no authorization hold involved. *See* LeBaron Decl. ¶¶ 2-4 & Exs. A & B. Because she never experienced this practice, she lacks standing to bring the claim. Plaintiff **also** lacks injury-in-fact because she did not **pay** those fees: Zions voluntarily credited those fees back on December 26, 2018. *Id.* ¶ 5.

**Second**, Plaintiff fails to (and cannot) allege redressability because she closed her last Zions account in July 2020, and is no longer a Zions customer. *Id.* ¶ 6. Even if she were to prevail on her contract claim, there is no remedy. She cannot obtain monetary damages, because she has not suffered any actual financial loss for fees she never paid. She cannot obtain injunctive or declaratory relief, because there is nothing to enjoin and no possibility of a future dispute with Zions. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) ("To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future."). Because Zions will not collect any fees in the future, there is no "real and immediate threat" of repeated injury, and nothing to enjoin. *Id.*; *see also Dog Walkin' Divas v. Wash. Fed. Inc.*, 2021 WL 2309675, *1-*3 (W.D. Wash. 2021) (dismissing NSF-fee claims based on lack of standing where plaintiff no longer had an account and never paid fees), *R&R adopted*, 2021 WL 3667016, *1 (W.D. Wash. 2021).

11
MOTION TO DISMISS

**B.      Plaintiff's Claims Are Time-Barred.**

The Agreement mandates that any action for breach of the Agreement, or "with respect to

your account . . . must be commenced ***within one year*** after the cause of action accrues." AC,

Ex. A § 23 (emphasis added).  Zions allegedly imposed improper fees in December 2018 and

April 2020, twenty-nine and fourteen months, respectively, before Plaintiff filed suit on June 9,

2021.  *See* AC ¶¶ 17, 104.  All claims are time-barred on the face of the AC.  "[P]arties may

contractually limit the time in which to bring an action in contract to a period shorter than that of

the applicable statute of limitations, so long as the limitation is reasonable."  *Deer Crest Assocs.*

*I, LC v. Silver Creek Dev. Grp., LLC*, 222 P.3d 1184, 1187–88 (Utah Ct. App. 2009); *see also*

*Burkett v. Convergys Corp*., 2015 WL 4487706, *8 (D. Utah 2015) (six-month limitation period

enforceable).  Honoring such provisions "is good public policy ... [as] [t]wo prime objectives of

contract law are to protect the justified expectations of the parties and to make it possible for

them to foretell with accuracy what will be their rights and liabilities under the contract."

*Barajas v. Myriad Genetic Labs., Inc.*, 2014 WL 5681691, *2 (D. Utah 2014).  Plaintiff alleges

no fees within a year of filing suit, so the Court should dismiss with prejudice.

**C.      Plaintiff Failed to Comply With Her Pre-Suit Notice Requirement.**

Plaintiff agreed that before she could file suit against Zions, she had an obligation to

review her statements with "reasonable promptness"—not to exceed 60 days—to identify any

"problem or error," any "unauthorized transactions," or "unauthorized items or debits" and give

Zions notice of the error, problem, or unauthorized request so that Zions can either correct any

error or explain why any perceived problem—here, Plaintiff's failure to understand the contract

terms—is misguided.  AC, Ex. A §§ 11(s), 14(a), 14(b).  The AC turns on an allegedly

MOTION TO DISMISS

unauthorized transaction, item, debit (or other "problem"), that appeared on her statement—Venmo's resubmitted ACH items "without Plaintiff's request"—and Zions's alleged mistaken assessment of an OD fee where "Plaintiff had a positive balance." AC ¶¶ 17, 104. She thus had an obligation to contact Zions within 60 days to allow it to resolve any problems.

Courts enforce pre-litigation notice requirements and dismiss complaints that fail to show compliance with this type of provision. *E.g.*, *Crockrom v. Bank of Am., N.A.*, 2020 WL 6747034, *4-*5 (S.D.N.Y. 2020) ("overdraft fees were the result of … an unreported 'problem' within the meaning of the Deposit Agreement," and "Plaintiff's breach-of-contract claim is therefore barred as a claim 'relating to the unreported problem.'").[4] Plaintiff's failure to timely raise these issues prevented Zions from resolving the propriety of alleged fees, and was thus a material breach that bars recovery. *See Lifevantage Corp. v. Domingo*, 208 F. Supp. 3d 1202, 1213-14 (D. Utah 2016); *Tyrel v. Maskcara Indus.*, 438 F. Supp. 3d 1279, 1288-90 (D. Utah. 2020) (60-day notice condition precedent was enforceable and required dismissal). Where a contract requires performance by both parties, the party claiming nonperformance of the other must establish the party's own performance. *Syme v. Symphony Grp. LLC*, 437 P.3d 576, 582 (Utah 2018). Because Plaintiff cannot allege she met this notice requirement, her claims fail.

### D.   The National Bank Act and Truth in Savings Act Preempt Plaintiff's Claims.

The real purpose of this action is to compel Zions to modify its disclosure practices. Plaintiff relies on other banks' disclosures, claiming that those banks "know how to plainly and

---

[4] *See also Overby v. Chase Manhattan Bank*, 351 F. Supp. 2d 219, 221, 225 (S.D.N.Y. 2005) (dismissing: "Because of plaintiff's failure to notify Chase within the required time period, he is now barred from asserting any of his banking claims."); *Beyer v. Countrywide Home Loan Serv., L.P.*, 2008 WL 1791506 *3 (W.D. Wash. 2008) (dismissing), *aff'd* 359 Fed. Appx. 701, 703 (9th Cir. 2009) ("it is not against public policy to resolve disputes before an action is brought") (citations omitted); *Giotta v. Ocwen Loan Servicing*, 706 F. Appx. 421 (9th Cir. 2017) (affirming dismissal of claims for failure to comply with a pre-litigation notice requirement).

clearly disclose" their "multiple fee" practices.  AC ¶¶ 29-47.  Zions allegedly "provides no such

contract language or disclosure, **and by not doing so**, deceives its accountholders."  *Id.* ¶ 48

(emphasis added).  Zions thus faces liability by not employing the disclosure practices used by

third-party banks.  Federal law preempts this "Simon-Says" liability theory.

Congress may preempt state law "either expressly through the statute or regulation's

language or impliedly through its aim and structure."  *Whittington v. Mobiloil Fed. Credit Union*,

2017 WL 6988193, *6 (E.D. Tex. 2017), *aff'd* 780 Fed. App'x. 171 (5th Cir 2019).  Implied

preemption exists when state law "actually conflicts" with federal law, such as "where … the

challenged state law stands as an obstacle to the accomplishment and execution of the full

purposes of the objectives of Congress."  *Id.* at *6; *Gutierrez v. Wells Fargo Bank, N.A*., 704

F.3d 712, 722 (9th Cir. 2012).  Preemption reaches any claim challenging conduct falling within

the scope of federal regulation: "Regardless of the nature of the state law claim alleged … the

proper inquiry is whether the legal duty that is the predicate of Plaintiffs' state law claim falls

within the preemptive power of the [statute] or regulations promulgated thereunder."  *Rose v.

Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008).

### 1.      National Bank Act Preemption.

The NBA preempts Plaintiff's claims because she seeks to mandate additional or

different disclosures.  Zions is a federally chartered national bank.  AC ¶ 8.  "[F]ederal control

shields national banking from unduly burdensome and duplicative state regulation."  *Watters v.

Wachovia Nat'l Bank*, 550 U.S. 1, 11 (2007).  The NBA preempts state laws that "prevent or

significantly interfere with" WaFd's exercise of its express and incidental powers.  *Barnett Bank

of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 32-33 (1996).  "[T]he usual presumption against

federal preemption of state law is inapplicable to federal banking regulation." *Wells Fargo Bank*

*N.A. v. Boutris*, 419 F.3d 949, 957 (9th Cir.2005).

Under the NBA, Zions is entitled to "exercise its deposit-taking powers ***without regard to***

***state law limitations*** concerning: … (iii) Disclosure requirements." 12 C.F.R. § 7.4007(b)

(emphasis added).  "[A] requirement to make particular disclosures falls squarely within the

purview of federal banking regulation and is expressly preempted" by the NBA.  *Gutierrez*, 704

F.3d at 726 (NBA preempted consumer protection claim based on overdraft disclosures).  This is

because "***[i]mposing liability for the bank's failure to sufficiently disclose its [overdraft]***

***method leads to the same result as mandating specific disclosures***," and "***[b]oth remedies are***

***tantamount to state regulation of disclosure***," which the NBA preempts.  *Id.* (emphasis added);

*see also Rose*, 513 F.3d at 1038 (NBA preempts affirmative disclosure requirements); *see also*

*New Mexico v. Capital One Bank (USA), N.A.*, 980 F. Supp. 2d 1314, 1330-31 (D. N.M. 2013)

(noting lack of Tenth Circuit authority; holding NBA preempts failure-to-disclose claims); *Fultz*

*v. World Sav. & Loan Ass'n*, 2008 WL 4131512, *2 (W.D. Wash. 2008) ("Despite the general

nature of the state laws at issue in this case, plaintiffs are attempting to use the laws to require

particular disclosures at particular times and in a particular manner") (NBA preempted state

laws); *see also Montgomery v. Bank of Am. Corp.*, 515 F. Supp. 2d 1106, 1114 (C.D. Cal. 2007)

("[S]tate law claims … based upon defendants' alleged improper disclosure of the NSF/OD fee

structure … are expressly preempted by 12 C.F.R. § 7.4007.").

### 2.    Truth in Savings Act Preemption.

TISA applies to all federally insured financial institutions, like Zions.  *See* AC, Ex. A at 1

(Zions is FDIC insured).  TISA's purpose is to "require the clear and uniform disclosure of …

the fees that are assessable against deposit accounts, so that consumers can make a meaningful

comparison between the competing claims of depository institutions with regard to deposit

accounts."  12 U.S.C. § 4301; *see also* 12 C.F.R. § 1030.1 (CFPB TISA regulation).  TISA

regulates disclosures "explain[ing] . . . ***how [a] fee will be determined[] and the conditions***

***under which the fee may be imposed***."  12 C.F.R. § 1030.4(b)(4) (emphasis added).  Critically,

"***[s]tate law requirements that are inconsistent with the requirements of [TISA] and this part***

***are preempted*** to the extent of the inconsistency." 12 C.F.R. § 1030.1(d) (emphasis added).

TISA likewise has requirements for what must appear on any monthly account statements and

dictates ***exactly*** how Zions must list overdraft and NSF fees.  *See* 12 C.F.R. § 1030.6(a)(3).

Plaintiff seeks to use her state-law claims to mandate different fee disclosures, alleging that

Zions's TISA-compliant disclosures somehow "make it impossible for Plaintiff to discover the

truth," that Zions must identify not just NSF and overdraft fees, but must label which of those

fees are "retry" fees and which fees are tied to debit-card authorization holds.  AC ¶¶ 106-112.

Zions fully disclosed all NSF fees and cannot disclose authorization-hold fees that did not occur.

Plaintiff's demands are ***exactly*** what TISA preempts.  *See* 12 C.F.R. § 1030.1(d).

Courts interpreting TISA dismiss claims identical to Plaintiff's as preempted.  For

example, in *Lambert v. Navy Federal Credit Union*, 2019 WL 3843064 (E.D. Va. 2019), a retry

NSF fee putative class action, the Court dismissed with prejudice, holding that to "the extent

Plaintiff challenges a perceived failure to disclose, the specific language used in the disclosure,

or the fairness of the fee practice itself, however, those arguments are clearly preempted" by

TISA.  *Id.* at *3.  More recently, in *Foltz v. Matanuska Valley Federal Credit Union*, 2021 WL

865542 (Alaska Super. 2021), the court agreed TISA preempted these claims:

> Foltz's state law claims regarding the federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted.  To the extent he challenges a perceived failure to disclose, the specific language used in the disclosure, or the fairness of the fee practice itself is clearly preempted.  Here, Foltz's claims that MVFCU fails to disclose its true fee practices and that its actual fee assessment practice is unfair are preempted.

*Id.* * 4; *see also Page v. Alliant Credit Union*, 2020 WL 5076690, *4 (N.D. Ill. 2020) ("Page compares Alliant's practices to other financial institutions" by citing different disclosures, but "Page's failure to disclose claims are preempted by TISA."); *see also Whittington*, 2017 WL 6988193, at *8-9 (TISA preempted overdraft claims premised on the theory the credit union "fail[ed] to disclose" its practice of charging multiple fees "for the same transaction.").

To dodge preemption, Plaintiff tries to couch her failure-to-disclose claims as a breach of contract claim.  But Plaintiff "cannot simply frame a disclosure issue as a breach of contract claim to avoid [TISA] law addressing disclosure requirements," because once "[s]tripped of the contractual veneer with which [Plaintiff] envelops her arguments, her claim is simply that the Bank erred in failing to disclose the [challenged fee]." *Cinar v. Bank of Am., N.A.*, 2014 WL 3704280, *3-4 (D. Md. 2014).  "[S]tate law challenges to a bank's failure to disclose certain fees or fee practices are routinely dismissed on [TISA] preemption grounds."  *Alfaro v. Bank of Am., N.A.*, 2021 WL 1149889, *2-*3 (S.D. Fla. 2021) (dismissing as preempted by TISA).

## E.    Plaintiff's Contract-Based Claims Fail on the Merits

Plaintiff's contract theories fail because Zions discloses the challenged practices, she never incurred an authorization hold fee, and her good faith and fair dealing claim is derivative.

### 1.    Zions Did Not Breach its Contract By Charging Retry NSF Fees

An analogy helps explain why Plaintiff's NSF-fee theory elevates form over substance: Consider a consumer who makes a purchase by writing a check.  The merchant goes to cash the

17

MOTION TO DISMISS

check, but it bounces, and the consumer's bank imposes an NSF fee.  The consumer responds by
again sending a check to the same merchant, for the same amount, for the same purchase—a
retry payment—and that check also bounces, so the bank again charges an NSF fee.  Plaintiff
claims a bank cannot impose a second fee because these payments were for the same purpose,
even though the consumer bounced two separate payment attempts, and even though her bank
had to process two payment requests.  The only difference here is that Plaintiff delegated her
retry payment request to Venmo.  But delegation does not change her contract terms.

     This hypothetical underscores that Plaintiff's theory abdicates all responsibility for
having insufficient funds, imposes unrecoverable costs on Zions for processing each payment
attempt, and leaves her merchant unpaid.  One court recently pointed out that the consequence of
this theory is to remove any incentive to bring accounts current or ensure merchants get paid:

> ***Some personal responsibility seems to be lacking***—"never mind that I didn't
> have the funds in my account to pay for an item/goods that I received and agreed
> to timely pay for, I shouldn't get more than one NSF fee" appears to be a cliff note
> version of the Plaintiffs' Complaint.  … ***NSF fees are designed to offset . . . costs***
> ***but also to incentivize the customer to have enough money to cover the claim***.

*Fenton v. Tri-County Bank & Trust Co.*, 2020 WL 8673276, *1 (Putnam Cnty. Super. Ct. Dec. 29,
2020), *vacated by settlement*, (March 2, 2021) (emphasis added).

     The Agreement explains ***how*** and ***when*** NSF fees arise, providing that "[i]f we do not
pay the ***presented*** transaction, the Item(s) may be returned and you may be subject to an NSF
fee," and that if Zions Bank does "not pay an Item, ***you will incur an NSF fee if [Zions]***
***return[s] an item because your account has an insufficient available balance***."  AC, Ex. A
§§ 7(o), 7(p) (emphasis added).  And the Fee Schedule discloses the ***amount*** of the fees and
likewise confirms that Zions will charge an NSF fee for any "transaction"—check, ACH, or

18
MOTION TO DISMISS

otherwise—"posted against insufficient funds."  AC, Ex. B at 3.  Read together, these provisions

confirm that any time a merchant presents a payment request against Plaintiff's account, and she

lacks sufficient funds, Zions returns the payment request and charges her an NSF fee.  Here,

Venmo made *two* ACH payment requests on *two* different days, and on *each* day she lacks

sufficient funds, so Zions charged her an NSF each time, just as it promised.

      Plaintiff tries to avoid this plain language by rewriting the Agreement, insisting that

Zions promised to charge only a "single" NSF fee, no matter how many times a merchant

presents payment requests against her account when it lacks sufficient funds.  AC ¶¶ 11, 13, 15,

18-20, 23.  But the word "single" does not appear in the Agreement in relation to fees.  Plaintiff

relies instead on the Fee Schedule—which, as the title suggests, lists the *amount* of the fee.  AC

¶ 20.  She claims the Fee Schedule promises "at most *a single* fee will be assessed 'per check' or

'per ACH' when a 'transaction' is returned or paid into overdraft."  *Id.*  The Fee Schedule says

no such thing.  It explains that for every payment presented against insufficient funds there is a

fee.  AC, Ex. B at 3.  This means that if Plaintiff's merchant makes *two* payment requests on *two*

different days, and on *each* day she lacks sufficient funds, Zions charges two fees:

> Plaintiffs appear at the onset to attempt to mislead the court in its first count. …
> [by claiming] the word "single" (fee) appears in the documents—which the
> Defendant points out it does not. The adjective used is "an." Clearly, the bank can
> charge "an" NSF for each time the claim is submitted, pursuant to the plain
> reading of the terms.

*Fenton*, 2020 WL 8673276, at *1 (emphasis added).  So too, here.[5]  Under the Agreement, the

question is not how many bills Plaintiff bounced but how many times she bounced them.

---

[5] In *Haines v. Wash. Trust Bank*, 2020 WL 6861458, *2-3 (Wash. Sup. Ct. 2020), the court
rejected plaintiff's citation to other disclosures as a basis for finding the defendant's disclosures
ambiguous, and held that the trigger for an NSF fee was not whether it was for a single invoice,
but whether plaintiff's merchant presented a second ACH payment request that the bank returned

MOTION TO DISMISS

Other courts agree.  Last year in *Winamaki v. Umpqua Bank*, 2020 WL 6861466 (Or. Cir. 2020), the same counsel brought the same retry-fee claim based on a similar disclosure:  "If a check, item or transaction is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item for insufficient funds (non-sufficient funds - NSF)").  *Id.* at *1 n.1.  The court dismissed, holding that the "contract is unambiguous because defendant expressly disclosed to plaintiff that it may charge a $35 fee each time it pays or returns a transaction that would overdraw plaintiff's account."  *Id.* at *2.  The same reasoning applies here.  *Cf.* AC, Ex. A §§ 7(o), 7(p) (after determining sufficient balance "at the time we receive the transaction for posting to your account," Plaintiff "will incur an NSF fee if we return an item because your account has an insufficient available balance").

Likewise, in *Lambert*, the court reasoned: "When Plaintiff's insurer 're-presented' the request for payment, it was a new ACH debit item—just as a second check would be a new check even if it was by the same merchant, in the same amount, for the same purpose—and was therefore eligible for a fee when it was returned for nonsufficient funds."  2019 WL 3843064, at *4.  Because the defendant returned the re-presented request, the second request warranted a second fee, so the court dismissed the complaint.  *Id.* at *3-4.  So too, here.

The singular use of the terms "item" or "charge" does not limit Zions to a single NSF fee:

Based on the singular use of the terms "charge" and "item," Page argues that Alliant can only charge one fee for a single transaction.  Again, Page reads this

---

due to insufficient funds.  *Id.* at *3.  The court found, on similar facts, that the defendant bank "did precisely what [it] said [it] would do— [it] charged a $30 NSF fee each time a third-party made an ACH withdrawal request when insufficient funds existed."  *Id*.; *see also Choy v. Space Coast Credit Union*, 2020 WL 3039243, *3 (Fla. Cir. Ct. 2020) (dismissing NSF fee claim, and observing that plaintiff's examples of "much better" disclosures "cannot inform the Court's analysis"); *Page*, 2020 WL 5076690, *4 (N.D. Ill. 2020) ("That other financial institutions use different language in relation to their overdraft policies does not establish any ambiguity").

section in isolation ignoring the plain text of [the disclosures].  The language in these provisions ***does not promise members that Alliant will charge just one overdraft fee per transaction***.  Rather, … Alliant charges its members an overdraft fee every time a third-party payee presents an item for payment against insufficient available funds. ***Page's stilted reading of the Membership Agreement does not create any ambiguity***.

2020 WL 5076690, at *4 (emphasis added).

>        **2.      Plaintiff's Authorization-Hold-Fee Claim Fails Because She Never Incurred any Such Fee and the Contract Discloses the Fee Practice.**

>              **a.      Plaintiff Never Incurred an Authorization Hold-Fee.**

As detailed in Section IV.A, *supra*, Plaintiff's Authorization Hold claim fails because she never received a fee based on an authorization hold and the overdraft fees she cites were refunded to her account the next business day.  Because she had no fee based on an authorization hold, and because the challenged fee was refunded, Plaintiff has no contract claim on this theory.

>              **b.      Zions Fully Discloses that Zions Will Assess Fees Based on an Available Balance at Payment (not Authorization)**

Even if Plaintiff had incurred an overdraft fee tied to an authorization hold—and she did not—her claim would still fail because Zions discloses this fee practice in its Agreement.

Plaintiff alleges that where a payment request is authorized against an account that has a positive available balance, the funds to make that payment "should be held aside for the payment of that same transaction," such that there should never be an NSF fee imposed, even if the account balance turns negative in between authorization and posting.  AC ¶ 77.  But what Plaintiff subjectively believes "should" be the case is irrelevant to what the Agreement actually provides.  The Agreement explains that amounts "subject to an Authorization Hold ***may not be applied to settle a specific debit card transaction or any other specific transaction***," and that if the "Available Balance in your account is not sufficient when the merchant submits the final

transaction amount to us, the settlement may cause your account to incur an NSF Fee," and that

this "<u>can occur even if your account had a sufficient Available Balance when the merchant</u>

<u>requested authorization</u>."  AC, Ex. A §§ 7(n), 7(o) (bold and italics added).  Zions also explains

that because of the order in which it posts and processes transaction each night, NSF fee may still

arise "even if your account had a sufficient Available Balance when the merchant requested

authorization."  *Id*. § 7(o)(1).  This is the precise disclosure Plaintiff claims is missing.

Several courts have examined this liability theory and rejected it under disclosures less

robust than those here.  In *Razavi v. Green State Credit Union*, 2020 WL 7379064 (Iowa Dist.

2020), the Court granted a Motion to Dismiss, rejecting these same allegations:

> Plaintiff never actually identifies a contract provision that GreenState purportedly breached.  At best, Plaintiff alleges that she ***believed*** no overdraft fee would be charged for the transaction in question and identifies contract provisions and extra-contractual information that allegedly gave her this impression.
>
> Plaintiff's Petition contains considerable allegations about how Plaintiff ***believed*** debit card transactions work.  … ***Of the 76 paragraphs of the Petition, only two quote the contract language and neither of them identifies language forbidding GreenState from determining overdraft fees at the time a transaction is processed, rather than the time a card is swiped***.

*Id.* at *1-*2.

On the merits, the *Razavi* court reviewed similar contract language and noted that the

overdraft language was tied to payment, not authorization.  *Id.* at *6.  Focusing on the payment-

ordering provisions, the Court noted that fees were based on available balance, which in turn is

affected by the payment order, such that any determination as to overdraft fees turns on payment,

not authorization.  *Id.* at *7.  Any other reading would render contract provisions redundant.  *See*

*also Whittington v. Mobiloil Federal Credit Union*, 2018 WL 6582824, at *6-8 (E.D. Tex. 2018),

*aff'd* 780 Fed. Appx. 171 (2019) (rejecting fraud claim based on the same theory because

disclosures confirmed that fees were assessed at the time of final payment, not authorization).

Likewise, in *Choy*, 2020 WL 3039243, the court considered the same two theories raised

here, and rejected both:

> ***Plaintiffs baldly assert that the contract promises to determine overdrafts at the
> time of authorization, not settlement.  The Court knows that there is no such
> specific contract provision***.  In reviewing the specific provisions dealing with
> overdrafts, collection, processing of items, and overdraft balance calculation, ***it is
> clear that an overdraft fee is assessed when the available balance is insufficient
> to pay a transaction when it is presented for payment. "Presented for payment"
> logically means when the transaction is actually paid or settled, not the prior
> authorization***. Accountholders are on express notice that this is when overdraft
> assessments are determined.

*Id.* at *3 (emphasis added).  The same reasoning applies because the contract here expressly

discloses that fees determined based on the available balance at payment, not authorization.

Similarly, in *Foltz v*, 2021 WL 865542, the court rejected the same theory:

> Foltz does not dispute the two-step [debit-card] process but argues that MVFCU
> should not assess any overdraft or NSF fees on an account holder's available
> balance because MVFCU has already placed the requested funds on hold.  ***But the
> Agreement explicitly provides that overdraft or NSF fees will be assessed
> against the account holder's available balance, not against the actual
> balance—which includes monies held for authorized transaction***s.  Therefore,
> MVFCU's practices comply with its written overdraft policy.

> Next, ***Foltz asserts that MVFCU promises to determine overdrafts at
> authorization, step one, and not at presentment.  However, the Agreement states
> that MVFCU assesses fees "based on the available balance in your account at
> the time of presentment."  As a result, MVFCU's overdraft practice does not
> breach the Agreement***.

*Id.* at *6-*7.  So too, here.

Finally, in *Boone v. MB Financial Bank, N.A.*, 375 F. Supp. 3d 987 (2019), the court also

rejected this theory.  There, as here, MB Financial's "Checking Agreements unambiguously

provide[d] that an OD occurs when MB Financial pays, and not merely authorizes, an amount in

excess of [plaintiff's] available balance." *Id.* at 995.  And there, as here, MB Financial's

disclosures defined an overdraft as occurring upon payment:  "An overdraft occurs when you do

not have enough money available in your account to cover a transaction, but we pay it anyway."

*Id.* at 990.  This language made clear MB Financial assessed OD fees when the debit card

transaction "is presented for settlement" (i.e., paid).  *Id.* at 993.  "On the date MB Financial pays

the transactions—the settlement date—there are 'insufficient available funds' ***because the***

***customer in the interim has chosen to make additional, intervening payments from her***

***account that caused it to have a negative balance***." *Id.*  (emphasis added).  The court in *Boone*

also rejected Plaintiff's manufactured "sequestration" argument, noting that the payment-order

provisions in the agreement prove that funds are not sequestered, but paid in a certain order:

> Boone claims that there are always funds available to "cover" a APPSN
> transaction because the bank "sequesters" the funds when it approves the debit
> transaction*.  **However, MB Financial correctly guides us to the Contract's out-
> of-order payments provision, which states that the bank will pay transactions in
> a given order and warns customers that "[t]he order in which items are paid is
> important if there is not enough money in your account to pay all of the items
> that are presented**." **The provision, as MB Financial correctly points out, does
> not suggest that the Bank will use a different payment order or method only for
> debit card transactions by "sequestering" funds at the time of authorization and
> then applying the funds at settlement regardless of the intervening changes to
> the account balance***.  In fact, the Overdraft Page fails to make any reference to a
> debit-card transaction or "debit holds."

*Id.* at 993 (emphasis added).  The same reasoning applies, and the Court should follow *Boone*,

*Foltz*, *Choy*, *Whittington*, and *Razavi*, and dismiss the contract claim based on this theory.

### 3.    Zions Did Not Breach the Duty of Good Faith and Fair Dealing.

Plaintiff purports to bring within her contract claim a cause of action for breach of the

duty of good faith and fair dealing.  AC ¶¶ 128-135; *see also id.* ¶¶ 49-53 (NSF fees); ¶¶ 93-95

(authorization hold fees).  The implied covenant claim fails for three reasons.

*First*, "'where there is no breach of an express covenant in the contract, there can be no cause of action for breach of an implied covenant therefrom.'" *Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1176, 1196 (D. Utah 2015); *see also Wardley Corp. v. Meredith Corp.*, 93 Fed. App'x 183, 186 (10th Cir. 2004) (holding that having "concluded that a breach of contract did not occur . . . there can be no breach of the implied covenant of good faith and fair dealing").  Because Plaintiff has not alleged a breach of the express terms of the contract, her implied covenant claim fails.

*Second*, where, as here, a contract's express terms address the subject matter of the implied covenant, "the implied covenant cannot inject its own sense of what amounts to fair dealing." *Progressive Fin. Holdings, LLC v. Kelcin, Inc.,* 2016 WL 5817056, *2-3 (D. Utah 2016).  "Where the parties themselves have agreed to terms that address the circumstance that gave rise to their dispute, . . . the court has no business injecting its own sense of what amounts to 'fair dealing.'" *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 817 (Utah 2011).

*Third*, exercising contractual rights, as Zions did here, cannot give rise to liability for breach of the implied covenant of good faith and fair dealing.  *PDQ Lube Ctr. v. Huber,* 949 P.2d 792, 798 (Utah Ct. App. 1997) ("[T]here is no violation of the duty of good faith, as a matter of law, when a party is simply exercising its contractual rights.").  Where "a party to a contract takes action consistent with the contract, there is no breach of the implied covenant." *Cohen v. Wrapsol Acquisition, LLC,* 177 F. Supp. 3d 1373, 1378-79 (D. Utah 2016).

## V.      CONCLUSION

The Court should dismiss Plaintiff's Amended Complaint with prejudice because her claims are contractually time barred, preempted by federal law, and fail on the merits.

25

MOTION TO DISMISS

DATED this 10th day of September, 2021.

**DAVIS WRIGHT TREMAINE LLP**

By /s/ Fred B. Burnside
   Fred B. Burnside
   Jake Freed


**RAY QUINNEY & NEBEKER P.C.**

By /s/ Beth J. Ranschau
   James S. Jardine
   Michael D. Mayfield
   Beth J. Ranschau


*Attorneys for Defendant*
*Zions Bancorporation, N.A.*

26
MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of September, 2021, I electronically filed the

foregoing **DEFENDANT ZIONS BANCORPORATION, N.A.'S MOTION TO DISMISS**

**PLAINTIFF'S AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF

filing system which sent notification of such filing upon the following:


Jason R. Hull
Trevor C. Lang
**MARSHALL OLSON & HULL, PC**
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
jhull@mohtrial.com
tlang@mohtrial.com

Jeffrey Kaliel
Sophia Gold
**KALIEL PLLC**
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
jkaliel@kalielpllc.com
sgold@kalielpllc.com


*/s/ Susan Seder*

4811-4538-1881v.2 0114609-000005